Opinion filed March 8,
2012

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00078-CV 

                                                    __________

 

       IN THE INTEREST OF Z.G.,
L.H., A.B., AND L.W., CHILDREN



 

                                  On
Appeal from the County Court at Law

 

                                                          Midland
County, Texas

 

                                                 Trial
Court Cause No. FM 50,995

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
trial court entered an order terminating the parental rights of the mother and
the fathers of Z.G., L.H., and L.W.  In the same order, the trial court awarded
managing conservatorship of A.B. to a paternal relative and possessory
conservatorship to A.B.’s father, but did not terminate either parent’s rights
to A.B.  The children’s mother (Candice) and the father of Z.G. and L.W. (John)
have each filed a notice of appeal.  We affirm.

Issues

            Candice
presents seven issues for review, and John presents two issues.  In her first
and second issues, Candice asserts that the evidence is legally and factually
insufficient to support the finding that she knowingly placed or knowingly
allowed the children to remain in conditions or surroundings that endangered
the physical or emotional well-being of the children.  In her third and fourth
issues, Candice challenges the legal and factual sufficiency of the evidence
supporting the finding that she engaged in conduct or knowingly placed the
children with persons who engaged in conduct that endangered the physical or
emotional well-being of the children.  In her fifth and sixth issues, she
challenges the trial court’s finding that termination of her parental rights is
in the best interest of the children.  In her seventh issue, Candice argues
that the trial court erred in awarding sole managing conservatorship of A.B. to
a relative, Sheila, because Sheila was not a party to the suit and because the
pleadings did not support such an award.  In his first issue, John contends
that Tex. Fam. Code § 263.405 (2007)[1]
is unconstitutional and that the trial court abused its discretion in finding
John’s appeal frivolous under that statute.  In his second issue, John argues
that the evidence is legally and factually insufficient to support the trial
court’s findings regarding best interest, endangering conduct, and constructive
abandonment.

Frivolous
Appeal

            The
trial court signed the order terminating parental rights on March 30, 2011.  John
and Candice each filed a statement of points for appeal, challenging the
sufficiency of the evidence to support the trial court’s various findings.  On May
9, 2011, the trial court held a Section 263.405(d) hearing regarding
frivolousness and ultimately determined that John’s appeal was frivolous
because he did not present a substantial question for review.  The trial court
entered orders regarding frivolousness on May 17, 2011.  The appellate record
contains the reporter’s record from the Section 263.405(d) hearing and the
reporter’s record from the termination hearing.  We hold, contrary to the
assertion made in the appellee’s brief, that John invoked this court’s jurisdiction
by filing his notice of appeal.  We also hold that John has asserted challenges
to the sufficiency of the evidence that present an arguable basis for appeal
and are not frivolous.  See In re K.E.L., No. 11-10-00144-CV, 2011 WL
2204071 (Tex. App.—Eastland June 2, 2011, no pet.) (mem. op.); In re Q.W.J.,
331 S.W.3d 9 (Tex. App.—Amarillo 2010, no pet.).[2]
 Accordingly, we will address the merits of the challenges to the sufficiency
of the evidence presented in John’s second issue.  John’s first issue is
sustained in part, and his challenge to the constitutionality of Section
263.405 is moot.  

Legal
and Factual Sufficiency

            Candice
and John both challenge the legal and factual sufficiency of the evidence
supporting termination.  With respect to the legal and factual sufficiency
challenges, termination of parental rights must be supported by clear and
convincing evidence.  Tex. Fam. Code
Ann. § 161.001 (West Supp. 2011).  To determine if the evidence is
legally sufficient in a parental termination case, we review all of the
evidence in the light most favorable to the finding and determine whether a
rational trier of fact could have formed a firm belief or conviction that its
finding was true.  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  To
determine if the evidence is factually sufficient, we give due deference to the
finding and determine whether, on the entire record, a factfinder could
reasonably form a firm belief or conviction about the truth of the allegations
against the parent.  In re C.H., 89 S.W.3d 17, 25–26 (Tex. 2002).  

            To
terminate parental rights, it must be shown by clear and convincing evidence
that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T)
and that termination is in the best interest of the child.  Section 161.001.

A.    
Candice’s Appeal

In
this case, the trial court found that Candice committed three of the acts
listed in Section 161.001(1).  The trial court found that she had knowingly
placed or knowingly allowed Z.G., L.H., and L.W. to remain in conditions or
surroundings that endangered the physical or emotional well-being of the
children, had engaged in conduct or knowingly placed Z.G., L.H., and L.W. with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children, and had failed to comply with the provisions of a
court order that specifically established the actions necessary for her to
obtain the return of Z.G., L.H., and L.W. who had been in the permanent or
temporary managing conservatorship of the Department of Family and Protective
Services for not less than nine months as a result of the children’s removal
from the parent for abuse or neglect.  See id. § 161.001(1)(D), (E), (O). 
The trial court also found that termination of Candice’s rights was in the best
interest of Z.G., L.H., and L.W.  See id. § 161.001(2).

            On
appeal, Candice does not challenge the trial court’s finding under Section 161.001(1)(O)
that she failed to comply with the provisions of a court order that specifically
established the actions necessary for her to obtain the return of Z.G., L.H.,
and L.W.  The unchallenged finding, which is supported by the evidence, is sufficient
to support termination as long as termination was shown to be in the children’s
best interest.  See Section 161.001; In re B.K.D., 131 S.W.3d 10,
16 (Tex. App.—Fort Worth 2003, pet. denied).  Therefore, we must address Candice’s
fifth and sixth issues concerning best interest, but we need not reach the
merits of her first, second, third, and fourth issues as they are not
dispositive of this appeal.  See Tex.
R. App. P. 47.1; In re B.K.D., 131 S.W.3d at 16.

            The
question we must address is whether the best interest finding is supported by
legally and factually sufficient evidence.  With respect to the best interest
of a child, no unique set of factors need be proved.  In re C.J.O., 325
S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the
non-exhaustive Holley factors to shape their analysis.  Holley v.
Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not
limited to, (1) the desires of the child, (2) the emotional and physical needs
of the child now and in the future, (3) the emotional and physical danger
to the child now and in the future, (4) the parental abilities of the
individuals seeking custody, (5) the programs available to assist these
individuals to promote the best interest of the child, (6) the plans for the
child by these individuals or by the agency seeking custody, (7) the stability
of the home or proposed placement, (8) the acts or omissions of the parent that
may indicate that the existing parent-child relationship is not a proper one,
and (9) any excuse for the acts or omissions of the parent.  Id. 
Additionally, evidence that proves one or more statutory grounds for
termination may also constitute evidence illustrating that termination is in
the child’s best interest.  C.J.O., 325 S.W.3d at 266.  

The
record shows that, on April 21, 2010, authorities were dispatched to the house
where Candice lived with her four children: Z.G., age 10; L.H., age 4; A.B.,
age 3, and L.W., age 1.   Cassandra Nunez, a mental health officer with the
Midland County Sheriff’s Office, testified that she was called to assist Adult
Protective Services to perform a welfare check on Candice.  When Officer Nunez
arrived, Candice was crying and asked for help.  According to Officer Nunez,
Candice was showing signs of emotional distress, paranoia, and maybe some
psychosis.  Candice said she was “in a bad place” at that time in her life, “a
really down point.”  Candice was talking about “psychic networks,” saying that
her mother and another woman were “actually getting into her head” and that she
could not keep a job or go out in public because she heard people “talking
about her future.”  Officer Nunez testified that Candice was not capable of
caring for the children at that time.  Officer Nunez called Child Protective
Services and then took Candice to Midland Memorial Hospital.

Melissa
Walker, an investigator with Child Protective Services, testified that she was
the removal worker in this case in 2010 and that she had also been involved
with Candice and her children in 2008.  The Department of Family and Protective
Services became involved with Candice in 2008 when L.H. was found walking
unsupervised down a busy highway.  It was also determined at that time that
Candice had been leaving the children in the care of a registered sex
offender.  The Department instituted a safety plan in 2008.  Walker testified
that, when she went to visit Candice in the hospital on April 21, 2010, Candice
told her that she was having a lot of issues; that the “Psychic Network was in
her head and was giving people information about her”; that there are people
“going into the future and changing things in the future”; and that, when she
goes to Wal-Mart, “everybody is looking at her because they know that they are
victims in her head.”  Walker testified that Candice was not making much sense
and that she talked very little about the children.

Candice
was treated and placed on medication for depression.  Candice subsequently quit
taking the medication when she felt she no longer needed it.  She testified
that her doctor later approved of her decision to quit taking her medication.  A
licensed professional counselor, who counseled Candice in June and July 2010, testified
that Candice’s depression affected her parenting and her ability to keep a
job.  The counselor also testified that Candice was withdrawn and distant and
that the parent-child bond between Candice and her children was lacking.

Testimony
showed that Candice had struggled with major depression since L.H. was born.  Candice’s
mother testified that Candice’s depression “affects everything” and that
Candice seemed to have “this psychic stuff” in her head.  At the time of trial,
Candice lived with her mother and her mother’s boyfriend in a one-bedroom
mobile home.  Candice slept on the couch.  Candice’s mother, who for health
reasons was not able to take the children, pleaded for a little more time for
Candice to get herself together.  According to Candice’s mother, Candice had
provided a safe and stable home environment for the children from 2005 to 2008
but that it had been “iffy” since then.  Candice’s mother agreed that, at the
time of trial, Candice could not provide a safe environment for the children.

The
record also reflects that the Department was concerned about Candice’s use of
drugs.  During the period after removal and prior to trial, Candice failed to
show up for several scheduled drug tests.  She tested positive for marihuana in
four or five separate drug tests during that time period, including the most
recent test she had taken.  Candice tested negative in only three of her drug
tests.  Furthermore, Candice failed to complete the required outpatient program
for the treatment of substance abuse.

Testimony
showed that, at the time of Candice’s hospitalization and the children’s
removal, Candice’s home was not a safe environment for the children.  The house
was “filthy,” and there was no edible food in the house.  The refrigerator was
not working properly, and it contained flies and rotten food.  The children’s
hygiene was poor.  Z.G. was at home, instead of at school, just because Candice
did not take him to school that day.  Z.G. appeared at that time to be
attentive to the needs of his younger siblings and to have taken on the role as
their caregiver.  Candice testified at trial that, on the day she was
hospitalized, she was a capable caregiver for her children.

After
their removal, Z.G. and L.H. had episodes in which they separately exhibited
troubling behavior and were temporarily placed in a psychiatric hospital.  L.H.
slammed another child’s finger in a door and laughed hysterically when the child’s
finger began bleeding; L.H. exhibited no signs of empathy.  Z.G. had
uncontrolled outbursts and behaviors, stood outside in the rain crying and
laughing hysterically stating that “it” was just “too much” for him, and reported
that his mother had thrown knives at him.  During a permanency conference, a
Department supervisor and a program director both questioned Candice about her
disciplinary methods.  Candice answered affirmatively when asked whether “she
had ever thrown knives at [Z.G.] or the other children or other items.”  At
trial, however, Candice emphatically denied that she had ever made such an
admission.

Z.G.,
L.H., and L.W. were ultimately placed together in a foster home in Fort Worth  with
foster parents who desired to adopt all three boys.  None of the children
testified at trial, and no evidence was offered regarding the desires of the
children.  There was evidence that Z.G.’s and L.H.’s behavioral issues had
improved since being placed in the foster home.

Based
on the evidence presented at trial, the trial court could reasonably have
formed a firm belief or conviction that termination of Candice’s rights would
be in the best interest of Z.G., L.H., and L.W.  We cannot hold that the
finding as to best interest is not supported by clear and convincing evidence. 
The evidence is both legally and factually sufficient to support the finding
that termination of Candice’s parental rights is in the best interest of Z.G.,
L.H., and L.W.  Candice’s fifth and sixth issues are overruled.

B.    
John’s Appeal

            The
trial court found that John had engaged in conduct or knowingly placed Z.G. and
L.W. with persons who engaged in conduct that endangered the physical or emotional
well-being of the children and that John had constructively abandoned Z.G. and
L.W. because they had been in the permanent or temporary managing conservatorship of the Department of Family and
Protective Services or an authorized agency for not less than six months and (1)
the Department or authorized agency had made reasonable efforts to return the
children to John, (2)
John had not regularly visited or maintained significant contact with the
children, and (3)
John had demonstrated an inability to provide the children with a safe
environment. See Section 161.001(1)(E), (N).  The trial
court also found that termination of John’s rights was in the best interest of Z.G.
and L.W.  See Section 161.001(2).

            The
record shows that Candice was essentially the sole parent for her children and
that John did not see Z.G. often, had never paid any child support, and was not
there for Z.G. emotionally.  John had never seen L.W.  John had denied that
there was even a possibility that he was L.W.’s father.  However, a paternity
test, which was conducted in conjunction with these proceedings, showed that
John was L.W.’s father.  John was incarcerated at the time of trial for the
offense of possession of a controlled substance in a correctional facility. 
John had prior convictions for unauthorized use of a motor vehicle and for
possession of a controlled substance.  He had been in county jail ten to
fifteen times and had spent nine months in a state jail facility.   John
admitted that he had not performed the service plan, that he had not visited
Z.G. after the Department removed Z.G. from Candice’s care in April 2010 even
though John was not incarcerated until July 2010, and that he had tested
positive for cocaine and marihuana in a drug test performed at the request of the
Department in May 2010.  John testified that he did not use cocaine and that
the cocaine must have “showed up through [his] pores.”  When asked how often he
smoked marihuana, John testified, “Not that much.  Probably two, three times a
week.”

            Adriana
Mendoza, the supervisor for the conservatorship unit of the Department in
Midland County, testified that John was not a significant father figure to Z.G.
or L.W., that John had not demonstrated an ability to provide a safe and stable
environment for his children, that the Department had
made reasonable efforts to return the children to John, that John had
not demonstrated the ability to maintain employment, that John had tested
positive for cocaine and marihuana, that John had not maintained a significant
relationship with Z.G. or L.W., and that John had had no contact of any sort
with either of the children after their removal.  Mendoza testified that,
throughout this case and before this case began, John put his needs before
those of his children.  Mendoza was of the opinion that termination of John’s
parental rights would be in Z.G.’s and L.W.’s best interest so they could have
a safe and stable environment with a caregiver who had a vested interest their future
and in their well-being.

To
support termination under Section 161.001(1)(E), the offending conduct does not
need to be directed at the child, nor does the child actually have to suffer an
injury.  In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009).  “[A] parent’s
use of narcotics and its effect on his or her ability to parent may qualify as
an endangering course of conduct.”  Id.  Subjecting children to a life
of uncertainty and instability may also endanger their physical and emotional
well-being.  In re R.W., 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004,
pet. denied).  To support termination for constructive abandonment under
Section 161.001(1)(N), it must be shown that the Department
or an authorized agency had been the managing
conservator of the child for not less than six months, that the Department or
authorized agency had made reasonable efforts to return the child, that the parent
had not regularly visited or maintained significant contact with the child, and
that the parent had demonstrated an inability to provide the child with a safe
environment.  

In this case, there was evidence that John engaged in a
course of conduct that endangered his children’s well-being.  He had been in
and out of prison or jail numerous times, and he abused drugs.  There was also
evidence that John had constructively abandoned Z.G. and L.W.  The children had
been under the managing conservatorship of the Department for eleven months. 
The Department had attempted to place John’s children with him when they were
removed from Candice’s care, but John was not a suitable placement.  The
Department made reasonable efforts to work with John.  John failed to contact
either child by any means while they were in the Department’s care.  There was
also evidence that John was unable to provide his children with a safe
environment.  The trial court’s findings under Section 161.001(1)(E) and (N)
are supported by the record.  

Furthermore, the trial court’s finding as to best interest
is also supported by the record.  In addition to the evidence that supports the
findings regarding abandonment and endangering conduct, there was evidence that
John had no real relationship with either child and that he could not provide a
safe and stable environment for them.  There was also evidence that Z.G. and
L.W., along with their brother, had been placed together in a foster
home in Fort Worth and that the foster parents wanted to adopt all three boys. 
Evidence showed that Z.G.’s emotional well-being had improved during his time
in the foster home.  Neither Z.G. nor L.W. testified at trial, and no evidence
was offered regarding their desires.

Based
on the evidence presented at trial, the trial court could reasonably have
formed a firm belief or conviction (1) that John had either constructively
abandoned Z.G. and L.W. or engaged in a course of conduct that endangered the
physical or emotional well-being of Z.G. and L.W. and (2) that termination of
John’s rights would be in the best interest of Z.G. and L.W.  We cannot hold
that the trial court’s findings are not supported by clear and convincing
evidence.  The evidence is both legally and factually sufficient to support the
findings regarding John and his children.  John’s second issue is overruled.

Conservatorship
of A.B.

In
her seventh issue, Candice complains that the trial court erred in awarding
sole managing conservatorship of A.B. to Sheila because the pleadings did not
support such an award and because Sheila was not a party to the lawsuit.  First,
we note that Candice waived this complaint by failing to urge it at trial or in
her statement of points for appeal. See Section 263.405(i); In
re J.H.G., 302 S.W.3d 304, 305 (Tex. 2010).  Second, we disagree with
Candice’s contention that her complaint involves subject-matter jurisdiction or
standing.  Citing to Tex. Fam. Code Ann.
§ 102.004(b) (West 2008), Candice suggests that Sheila must have
intervened to be eligible to be appointed as A.B.’s conservator.  Section
102.004(b) is not applicable in this case as this case was instituted by the
Department for the children’s protection.  In re C.S., 264 S.W.3d 864,
869 (Tex. App.—Waco 2008, no pet.).  The trial court’s jurisdiction was invoked
by the Department’s pleadings requesting that Candice’s parental rights to all
of her children be terminated and that the children be permanently placed with
a relative or other suitable person as the permanent sole managing conservator.
 A.B. had been placed with Sheila, a paternal cousin, prior to trial.  Sheila
was identified in the permanency plan as an appropriate relative caregiver for
A.B.  It was the Department’s recommendation that A.B. remain with Sheila and
that Sheila be appointed as A.B.’s conservator.  We hold that the trial court
had the authority to appoint Sheila as A.B.’s managing conservator.  See
Tex. Fam. Code Ann. §§ 161.205,
263.404 (West 2008); In re C.S., 264 S.W.3d at 869.  Candice’s seventh
issue is overruled.

The
order of the trial court is affirmed.  

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

March 8, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]We note that Section 263.405 has been drastically
amended and partially repealed and no longer contains the pro-visions about
which John complains in this appeal.  The amendments took effect on September
1, 2011, while this case was pending in this court.  Act of April 29, 2011,
82nd Leg., R.S., ch. 75, §§ 4, 5.  In this opinion, we refer to the version of
Section 263.405 that was in effect at the time of the trial court’s order.

 





[2]In making a frivolous determination under Section
263.405(d), a trial court was not to decide the merits of a party’s appeal;
that task fell within the province of an appellate court.  In re Q.W.J.,
331 S.W.3d at 14.  Instead, the trial court was to determine whether there was
an arguable basis for an appeal, i.e., whether the issues raised were
frivolous.  Id.  Sufficiency of the evidence is an arguable issue in an
appeal from a contested termination proceeding.  Id.